LONDON & LANCASHIRE INDEMNITY COMPANY OF
AMERICA v. ENGREL J. NELSEN AND ANOTHER,
*d. b. a* NELSEN CONSTRUCTION COMPANY,
AND OTHERS.
A. J. BERNDT, RECEIVER.[1]

March 24, 1950.

No. 35,073.

[1]Reported in 41 N. W. (2d) 826.

L. P. *Johnson,* for appellants.

*G. P. Mahoney* and *John S. Morrison,* for respondent London & Lancashire Indemnity Company of America.

*A. J. Berndt, pro se.*

MAGNEY, JUSTICE.

Engrel J. Nelsen and Jannes B. Nelsen were copartners doing business as the Nelsen Construction Company. On September 24, 1941, they entered into a contract for the construction of a post-office building at Ada. Plaintiff became the surety on the construction bond. The company agreed to hold plaintiff harmless from all liability which it should or might sustain by reason of the obligation which it had assumed, including attorney's fees. The company failed to pay for certain labor and material which went into the construction of the building, and plaintiff was compelled to make good the default. It brought this action against the partnership to recover the payments it had made under the terms of the bond, together with attorney's fees. The partners were the owners of certain nonexempt real estate in North Mankato, which they mortgaged to their wives, defendants Esther F. Nelsen and Dolores E. Nelsen. Plaintiff claims that these mortgages were made without fair consideration and with intent to hinder, delay, and defraud creditors. It joined the wives as defendants and asked to have the mortgages set aside. In its complaint, plaintiff also sets out that there is owing from the United States of America $1,607.83 as the final payment due the partnership under the contract for the construction of the post office. It alleges also that the partnership has assigned this amount to plaintiff, but that the United States government has declined to recognize said assignment or pay the money to anyone other than defendant partners unless a trustee, re-

ceiver, or other representative duly appointed by a court of competent jurisdiction makes claim therefor. It further alleges that the defendant partners have departed from the state with intent to defraud or delay their creditors. In order primarily to reach the said sum of money due as final payment for the construction of the post office and also to reach any other property of defendant partners, plaintiff alleges that it is necessary for a receiver to be appointed of any nonexempt assets of defendant partners as individuals and as copartners. The complaint was verified. A writ of attachment was issued and levy made on the real estate owned by defendant partners in North Mankato. An ex parte order was also made on May 19, 1945, appointing respondent A. J. Berndt receiver.

The defendant copartners put in separate answers questioning the jurisdiction of the court and claiming that the mortgages above described were bona fide and valid. The defendant wives also interposed a separate answer claiming that the mortgages which they held on the real estate of the partnership were bona fide and valid. Neither answer questioned the power of the court to appoint a receiver as asked for in the complaint. The case came on for trial before the court. It allowed plaintiff recovery for $11,098.77, held the mortgages regular and valid, and directed that defendant wives recover their taxable costs and disbursements. No further proceedings were held in the original action; and, since the wives had been successful in their contentions that the mortgages were regular and valid, the litigation, so far as they were concerned, was at an end.

The receiver collected the balance due on the post-office contract and also rents from the tenants of the partners' real estate in North Mankato. He filed two reports as receiver, one in 1948 and one in 1949. The partners filed no objection to the reports and made no appearance at the hearing for their allowance. The defendant wives filed objections to the receiver's reports on the ground that he had failed to pay certain taxes on the real estate and the interest on the mortgages, and claimed that the money received by the re-

ceiver as rents should be applied to the payment of these items. In their objections to the reports of the receiver, they made no objection to his appointment. Neither did they make any objection to such appointment at the hearing for the allowance of his accounts. No physical waste was shown. On June 27, 1949, the court filed its order directing the receiver to pay to plaintiff the sum of $2,028.32, the balance he had on hand, and further directing plaintiff to execute and deliver, upon the receipt of such sum, a partial satisfaction of the judgment to the extent of the payment received by it.

The defendant wives appealed from this order, thereby bringing the matter here for review.

There are several assignments of error. However, the argument is practically confined to an attack on the appointment of the receiver. It is claimed that the appointment was not authorized by statute, that it was ex parte, and that defendants were given no notice.

The action was commenced on May 18, 1945. The receiver was appointed May 19, 1945. The court allowed his final account on June 27, 1949, and discharged him. The notice of appeal was served July 22, 1949. The first time any question was raised as to the propriety of the action of the court in appointing the receiver is to be found in appellants' brief in this court. Thus, appellants permitted the receiver to act for over four years, and the court's action in making the appointment was first questioned after his final account had been approved and he had been discharged.

■ At least two reasons suggest themselves why appellants must fail on this appeal. In the first place, it is apparent that they are not aggrieved parties and thus entitled to ask that the trial court's action be reviewed here. The litigation, so far as they are concerned, was at an end when they were successful in their contention that their mortgages were valid. They were not in position to quarrel with that result, and their codefendants took no further action. Furthermore, they had no interest in the appointment. The property which the receiver took over was property that belonged to the copartnership, not to appellants. Their ownership of

the mortgages was not interfered with or disturbed by the receivership.

■ In the second place, if we were to assume that appellants are in a position to attack the appointment of the receiver, their acquiescence in the validity of his appointment must follow the long delay in questioning it. This court has so held in a similar situation. Windom Nat. Bank v. Reno, 172 Minn. 193, 214 N. W. 886.

Order affirmed.